**FILED - GR**
January 31, 2012 3:01 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY _Jks_ /_____ SCANNED BY _AW) \ 3 \



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**1:12-cv-95**

**Robert J. Jonker**
**U.S. District Judge**

MICHAEL BROWN,

       Plaintiff,

v.

SCOTT LOWERY LAW OFFICE,
P.C.,

       Defendant.

_____/

## I.    Introduction

1.    This is an action for damages brought against a debt collector for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Michigan Collection

Practices Act ("MCPA"), M.C.L. § 445.251 *et seq*., and Michigan Occupational Code ("MOC"),

M.C.L. § 339.901 *et seq*.

## II.    Jurisdiction

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C.

§ 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28

U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place

here.

## III.    Parties

3.    Plaintiff Michael Brown is a natural person residing in Berrien County, Michigan.

Mr. Brown is a "consumer" and "person" as the terms are defined and/or used in the FDCPA.

Mr. Brown is a "consumer," "debtor" and "person" as the terms are defined and/or used in the

1

MCPA and MOC.

    4.     Defendant Scott Lowery Law Office, P.C. ("Lowery"), also doing business as P. Scott Lowery, P.C., is a Colorado professional corporation, with its principal office located at 4500 Cherry Creek Drive South, Suite 700, Denver, Colorado 80246. The registered agent for Lowery is Kayla Elizabeth Liggett, 4500 Cherry Creek Drive South, Suite 700, Denver, Colorado 80246. Lowery uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Lowery regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Lowery is a "debt collector" as the term is defined and/or used in the FDCPA. Lowery is a "regulated person" as the term is defined and/or used in the MCPA. Lowery is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

**IV. Facts**

    5.     Mr. Brown had a credit account (No. 6019182321658025) with GE Money Bank which he used to purchase goods and/or services for personal, family and household purposes. Any resulting obligation of Mr. Brown to money was a "debt" as the term is defined and used in the FDCPA, MCPA and MOC.

    6.     Mr. Brown had a dispute with GE Money Bank regarding the alleged debt.

    7.     Mr. Brown continues to dispute the alleged debt. Mr. Brown continues to refuse to pay the alleged debt.

    8.     Apparently, GE Money Bank charged off the alleged debt and sold the related account.

    9.     Apparently, a company named CACH, LLC ("CACH") claimed to have purchased

2

the account and alleged debt from GE Money Bank or an assignee of GE Money Bank.

10.     CACH, LLC is a Colorado limited liability company, purportedly with offices at 4340 South Monaco Street, 2ⁿᵈ Floor, Denver, Colorado 80202. CACH is related, at a minimum through common ownership, with defendant Lowery. CACH is in the business of purchasing delinquent consumer debts, often paying on average less than five cents on the dollar. CACH uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CACH is a "debt collector" as the term is defined and used in the FDCPA. CACH is a "regulated person" as the term is defined and used in the MCPA. CACH is a "collection agency" and "licensee" as the terms are defined and used in MOC.

11.     CACH hired Lowery to collect the alleged debt from Mr. Brown.

12.     In or about July 2011, Lowery telephoned Mr. Brown's residence. The call was answered by Mr. Brown's wife. A Lowery employee identified as "Amber" asked to speak with Mr. Brown. Mrs. Brown put Mr. Brown on phone. The Lowery employee stated to Mr. Brown that Lowery was attempting to collect a debt owed by Mr. Brown in connection with his GE Money Bank account. Mr. Brown stated that his wife handled the family finances and instructed the Lowery employee to speak with his wife. Mr. Brown put Mrs. Brown on the phone. The Lowery employee stated to Mrs. Brown that Lowery was attempting to collect a debt owed by Mr. Brown in connection with his GE Money Bank account. The Lowery employee offered to settle he account for less than one-half of the alleged balance. Mrs. Brown stated that she would review the family finances and call Lowery back in a day or so to discuss the matter.

13.     The next day, Lowery placed a telephone call to a dental office owned and operated by Mr. Brown's father and mother. The receptionist answered the call, identifying the

3

number called as that of a dental office. A Lowery employee identified as "Amber" spoke with the receptionist and stated that she was attempting to contact "Michael Brown." The receptionist stated that Mr. Brown did not work at the dental office. The Lowery employee stated that her name was Amber and that Michael Brown needed to call her immediately. The Lowery employee provided her telephone number to the receptionist. The Lowery employee instructed to the receptionist to deliver a message to Michael Brown, stating that he needed to call Lowery immediately. That same day, the receptionist delivered the message to Mr. Brown's mother. That same day, Mr. Brown's mother delivered the message to Mr. Brown.

14.     The next day, Lowery placed a telephone call to a dental office owned and operated by Mr. Brown's father. The receptionist answered the call, identifying the number called as that of a dental office. A Lowery employee identified as "Amber" spoke with the receptionist and stated that she was attempting to contact "Michael Brown." The receptionist stated that Mr. Brown did not work at the dental office. The Lowery employee stated that her name was Amber and that Michael Brown needed to call her immediately. The Lowery employee provided her telephone number to the receptionist. The Lowery employee instructed to the receptionist to deliver a message to Michael Brown, stating that he needed to call Lowery immediately.

15.     Mr. Brown is not employed at his parents' dental office.

16.     Lowery and its employee had no reason to believe that Mr. Brown was employed by his parents' dental office when Lowery and its employee placed the above-described telephone call to the dental office.

17.     Mr. Brown has never given Lowery permission to speak with anyone at his

4

parents' dental office regarding the alleged debt.

18.    A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

19.    The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

20.    A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt. 15 U.S.C. § 1692b(2).

21.    The FDCPA states that a debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall, "only if expressly requested, identify his employer." 15 U.S.C. § 1692b(1).

22.    The Lowery employee wrongfully identified her employer to the receptionist at Mr. Brown's parents' dental office without being expressly requested to do so, violating the FDCPA and Michigan law.

23.    When Lowery and its employee placed the above-described telephone call to Mr. Brown's parents' dental office, Lowery and its employee already knew Mr. Brown's place of abode, Mr. Brown's telephone number at his place of abode, and Mr. Brown's place of employment. In fact, and as stated above, Lowery's employee had spoken directly with Mr. Brown at his telephone number at his place of abode the day before Lowery and its employee telephoned the Mr. Brown's parents' dental office. Accordingly, there was no lawful reason for Lowery's employee to telephone the dental office and leave a message to be delivered to Mr.

5

Brown.

24.     The Lowery employee communicated with Mr. Brown's parents' dental office for a purpose other than to acquire location information regarding Mr. Brown.

25.     The Lowery employee unlawfully instructed the receptionist at Mr. Brown's parents' dental office to deliver a message to Mr. Brown.

26.     The Lowery employee communicated with the receptionist at Mr. Brown's parents' dental office for a purpose other than to acquire location information regarding Mr. Brown. Specifically, Lowery and its employee wrongfully turned the receptionist and Mr. Brown's mother into *de facto* debt collectors for Lowery by causing them to deliver a message to Mr. Brown in an effort to collect a debt, and violated 15 U.S.C. § 1692b and 15 U.S.C. § 1692c(b).

27.     The Lowery employee failed to state to the receptionist at Mr. Brown's parents' dental office that the purpose of the communication with the receptionist was for acquisition, confirmation and/or correction of location information about Mr. Brown.

28.     On or about October 11, 2011, Lowery placed a telephone call to Mr. Brown's residential telephone and a Lowery employee left a message on Mr. Brown's voice mail, stating that his name was Reuben, that he worked for the P. Scott Lowery Law Office, that he was attempting to communicate with Mr. Brown, and that he was requesting a call back to 866-860-7443, at extension 1336. The Lowery employee did not disclose in the message that he was a debt collector. The Lowery employee did not disclose in the message that he was attempting to collect a debt from Mr. Brown. The Lowery employee did not reveal in the message the purpose for the telephone call. The Lowery employee concealed in the message the purpose for the

6

telephone call.

29. On or about October 12, 2011, Lowery placed a telephone call to Mr. Brown's residential telephone and a Lowery employee left a message on Mr. Brown's voice mail, stating that his name was Reuben, that he worked for the P. Scott Lowery Law Office, that he was attempting to communicate with Mr. Brown, and that he was requesting a call back to 866-860-7443, at extension 1336. The Lowery employee did not disclose in the message that he was a debt collector. The Lowery employee did not disclose in the message that he was attempting to collect a debt from Mr. Brown. The Lowery employee did not reveal in the message the purpose for the telephone call. The Lowery employee concealed in the message the purpose for the telephone call.

30. On or about November 7, 2011, Lowery placed a telephone call to Mr. Brown's residential telephone and a Lowery employee left a message on Mr. Brown's voice mail, stating that her name was Janelle Hernandez, that she worked for the P. Scott Lowery Law Office, that she was attempting to communicate with Mr. Brown, and that she was requesting a call back to 866-860-7443, at extension 1321. The Lowery employee did not disclose in the message that she was a debt collector. The Lowery employee did not disclose in the message that she was attempting to collect a debt from Mr. Brown. The Lowery employee did not reveal in the message the purpose for the telephone call. The Lowery employee concealed in the message the purpose for the telephone call.

31. On or about November 8, 2011, Lowery placed a telephone call to Mr. Brown's residential telephone and a Lowery employee left a message on Mr. Brown's voice mail, stating that her name was Janelle Hernandez, that she worked for the P. Scott Lowery Law Office, that

7

she was attempting to communicate with Mr. Brown, and that she was requesting a call back to 866-860-7443, at extension 1321. The Lowery employee did not disclose in the message that she was a debt collector. The Lowery employee did not disclose in the message that she was attempting to collect a debt from Mr. Brown. The Lowery employee did not reveal in the message the purpose for the telephone call. The Lowery employee concealed in the message the purpose for the telephone call.

32.     On or about December 1, 2011, Lowery placed a telephone call to Mr. Brown's residential telephone and a Lowery employee left a message on Mr. Brown's voice mail, stating that her name was Rebecca, that she worked for the P. Scott Lowery Law Office, that she was attempting to communicate with Mr. Brown, and that she was requesting a call back to 303-218-7550, at extension 1339. The Lowery employee did not disclose in the message that she was a debt collector. The Lowery employee did not disclose in the message that she was attempting to collect a debt from Mr. Brown. The Lowery employee did not reveal in the message the purpose for the telephone call. The Lowery employee concealed in the message the purpose for the telephone call.

33.     On or about December 8, 2011, Lowery placed a telephone call to Mr. Brown's residential telephone and a Lowery employee left a message on Mr. Brown's voice mail, stating that his name was Mr. McBride, that he worked for the P. Scott Lowery Law Office, that he was attempting to communicate with Mr. Brown, and that he was requesting a call back to 866-860-1341, at extension 1341. The Lowery employee did not disclose in the message that he was a debt collector. The Lowery employee did not disclose in the message that he was attempting to collect a debt from Mr. Brown. The Lowery employee did not reveal in the message the purpose

8

for the telephone call. The Lowery employee concealed in the message the purpose for the telephone call.

34. On or about January 24, 2012, Lowery placed a telephone call to Mr. Brown's residential telephone and a Lowery employee left a message on Mr. Brown's voice mail, stating that her name was Melissa Sanchez, that she worked for the P. Scott Lowery Law Office, that she was attempting to communicate with Mr. Brown, and that she was requesting a call back to 866-860-7443, at extension 1347. The Lowery employee did not disclose in the message that she was a debt collector. The Lowery employee did not disclose in the message that she was attempting to collect a debt from Mr. Brown. The Lowery employee did not reveal in the message the purpose for the telephone call. The Lowery employee concealed in the message the purpose for the telephone call.

35. The only reason Lowery placed the above-described telephone calls to Mr. Brown's residential telephone, and the only reason the Lowery employees left the above-described messages on Mr. Brown's voice mail, was to attempt to collect the alleged debt from Mr. Brown.

36. The telephone number called by Lowery in the above-described telephone calls in which the Lowery employees left the above-described messages on Mr. Brown's voice mail, was the same telephone number used by Lowery to call and speak directly with Mr. Brown in or about July 2011.

37. The telephone number called by Lowery in the above-described telephone calls in which the Lowery employees left the above-described messages on Mr. Brown's voice mail, was the same telephone number used by Lowery to call and speak directly with Mr. Brown's wife

9

in or about July 2011.

38.     The words spoken by each of the Lowery employees in each of the above-described messages left on Mr. Brown's residential telephone voice mail conveyed information regarding a debt directly or indirectly to Mr. Brown.

39.     The words spoken by each of the Lowery employees in each of the above-described messages left on Mr. Brown's residential telephone voice mail constituted a "communication" as the term is defined and used in the FDCPA., MCPA and MOC.

40.     Lowery and its employees did not disclose in the above-described messages left by the Lowery employees on Mr. Brown's voice mail that call was from a debt collector.

41.     By failing to disclose in the above-quoted message left by Lowery and its employees for Mr. Brown on his voice mail that the caller was a debt collector, Lowery violated the FDCPA, 15 U.S.C. § 1692e(11).

42.     When Lowery and its employees left the above-described messages for Mr. Brown on his residential voice mail, Lowery was aware of multiple published federal district court opinions in which the courts held that it is unlawful for a debt collector to leave a recorded message for a debtor/consumer without identifying itself as a debt collector. *See Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.,* 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v. NCO Financial Systems, Inc.,* 424 F.Supp.2d 643 (S.D.N.Y. 2006).

43.     Lowery and its employees did not reveal and concealed the purpose of the telephone calls in each of the above-described message left by the Lowery employees on Mr. Brown's residential telephone voice mail, which violated the MCPA, M.C.L. § 445.252(e).

10

44.     Lowery and its employees did not reveal and concealed the purpose of the telephone calls in each of the above-described message left by the Lowery employees on Mr. Brown's residential telephone voice mail, which violated the MOC, M.C.L. § 339.915(e).

45.     Each Lowery employee who left a message on Mr. Brown's residential telephone voice mail intended to speak to the words the employee spoke when leaving the message.

46.     The above-described messages left by the Lowery employees on Mr. Brown's residential telephone voice mail all were scripted by Lowery.

47.     The above-described acts and omissions of Lowery and its employees done in connection with efforts to collect the alleged debt from Mr. Brown were done intentionally and wilfully.

48.     Lowery and its employees intentionally and wilfully violated the FDCPA, MCPA and MOC.

49.     CACH is liable for the acts and omissions of Lowery and its employees, done in connection with efforts to collect the alleged debt on behalf of CACH and from Mr. Brown. Plaintiff intends to file an amended complaint to name CACH (or any other true owner of the alleged debt) as an additional defendant once the identity of the true owner of the alleged debt is determined through discovery.

50.     As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which he should be compensated in an amount to be established by jury and at trial.

11

## V.    Claims for Relief

### Count 1– Fair Debt Collection Practices Act

51.    Plaintiff incorporates the foregoing paragraphs by reference.

52.    Defendant has violated the FDCPA.  Defendant's violations of the FDCPA

include, but are not necessarily limited to, the following:

a)    Defendant violated 15 U.S.C. § 1692b;

b)    Defendant violated 15 U.S.C. § 1692c;

c)    Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

d)    Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

e)    Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

## Count 2 – Michigan Collection Practices Act

53. Plaintiff incorporates the foregoing paragraphs by reference.

54. Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendant violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

c) Defendant violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (I) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor;

d) Defendant violated M.C.L. § 445.252(m) by bringing to public notice that the consumer is a debtor;

e) Defendant violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f) Defendant violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 445.257(2);

b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

c) Statutory damages pursuant to M.C.L. § 445.257(2);

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

13

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

## Count 3 – Michigan Occupational Code

55.      Plaintiff incorporates the foregoing paragraphs by reference.

56.      Defendant has violated the MOC. Defendant's violations of the MOC include,

but are not necessarily limited to, the following:

a)      Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendant violated M.C.L. § 339.915(e) by concealing or not revealing the

purpose of a communication when it is made in connection with collecting a debt;

c)      Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication

with a debtor the following: (I) the legal status of a legal action being taken or

threatened and (ii) the legal rights of a creditor or debtor;

d)      Defendant violated M.C.L. § 339.915(m) by bringing to public notice that the

consumer is a debtor;

e)      Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or

abusive method to collect a debt;

f)      Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

g)      Defendant violated M.C.L. § 339.919.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to M.C.L. § 339.916(2);

b)      Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)    Statutory damages pursuant to M.C.L. § 339.916(2);

d)    Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2); and

e)    Equitable relief pursuant to M.C.L. § 339.916(1).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: January 30, 2012

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com

15